1
2
3
4
5
6
7

8                      UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,           No. 1:15-cr-00272-DAD-BAM

12               Plaintiff,

13       v.                        ORDER DENYING DEFENDANT EDMOND
                                  HORMOZI'S MOTION FOR

14    EDMOND HORMOZI,                MODIFICATION OF SENTENCE UNDER 18
                                   U.S.C. § 3582(c)(1)(A)

15              Defendant.
                                 (Doc. Nos. 294, 319)

16

17

18         Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C.

19 § 3582(c)(1)(A) brought on behalf of defendant Edmond Hormozi. (Doc. No. 294.) That motion

20 is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus

21 ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

22                               **BACKGROUND**

23         On October 1, 2015, an indictment was returned charging defendant Hormozi with one

24 count of conspiracy to distribute and possess with intent to distribute a controlled substance in

25 violation of 21 U.S.C. §§ 846 and 841(a)(1) (count one); two counts of distribution of

26 methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (counts two and

27 three); and one count of attempt to distribute oxycodone in violation of 21 U.S.C. §§ 841(a)(1)

28 /////

                                   1

and 846 (count four).[1]  (Doc. No. 19.)  On October 31, 2019, following a three-day jury trial, defendant Hormozi was found guilty on counts one, two, and three of the four-count indictment. (Doc. Nos. 197, 199.)  On February 18, 2020, the court sentenced defendant Hormozi to 126 months in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a 36-month term of supervised release.  (Doc. Nos. 220, 224.)  The court also imposed a $300 special assessment. (*Id.*)  On October 28, 2020, the Ninth Circuit Court of Appeals summarily affirmed the judgment of conviction.  (Doc. No. 287.)

Defendant Hormozi is currently serving his sentence at Giles W. Dalby Correctional Institution ("CI Dalby") located in Post, Texas.  (Doc. No. 319 at 3.)  As of the date of this order, defendant has served approximately 23.5 months, or 18.7% of his full 126-month custodial sentence.  (Doc. No. 322-1 at 4.)  Accounting for good time credit, defendant Hormozi's projected release date is July 7, 2028 according to BOP's inmate data records.  (*Id.*)

On February 12, 2021, defendant Hormozi, proceeding *pro se,* filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 294.)  On June 11, 2021, following the appointment of counsel (Doc. No. 300), defendant's counsel filed a supplemental brief in support of that motion.  (Doc. No. 319.)  On June 25, 2021, the government filed its opposition to the motion.  (Doc. No. 322.)  Defendant filed a reply thereto on July 6, 2021.  (Doc. No. 330.)

The government contends that on May 19, 2021, while in custody serving his prison sentence, defendant Hormozi declined the administration of a COVID-19 vaccine.  (Doc. No. 322 at 5.)  In his reply to the government's opposition, defendant Hormozi concedes that by his own choice he has not received the COVID-19 vaccine.  (Doc. No. 330 at 2.)

**LEGAL STANDARD**

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may

---

[1]  The government moved to dismiss count four as to defendant Hormozi prior to trial.  (Doc. No. 185 at 1.)

not be modified by a district court except in limited circumstances.").  Those limited

circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*,

452 F. Supp. 3d 964, 968 (D. Or. 2020).  Prior to the enactment of the First Step Act of 2018

("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C.

§ 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their

own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).

In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

[2]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed."  *Id.*  "Appeal to the General Counsel is the final administrative appeal."  *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights."  *See* 18 U.S.C. § 3582(c)(1)(A).

[3]  Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6

3

The applicable policy statement with respect to compassionate release in the U.S.

Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and

compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g

Comm'n 2018)[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash.

2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and

compelling reasons," even though that policy statement was issued before Congress passed the

FSA and authorized defendants to file compassionate release motions). However, the Ninth

Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy

statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v.*

*Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not

---

months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L.
116-136, expands the BOP's authority to release incarcerated defendants without judicial
intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for
which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director
determines appropriate," assuming "the Attorney General finds that emergency conditions will
materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II,
§ 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered
emergency period." *Id.* The BOP's authority expires "30 days after the date on which the
national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was
enacted, the Attorney General issued a memo instructing the BOP to "immediately review all
inmates who have COVID-19 risk factors" beginning with those who are housed at facilities
where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of
Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has
acted on the Attorney General's guidance, including one case in which a sentenced prisoner was
released to home confinement after serving less than half his sentence from a facility that reported
no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort
Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.
com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the
prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release
prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid
COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-
manafort-released-from-prison-amid-covid-19-fears.

[4] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C.
§ 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the
community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth
Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C.
§ 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G.
§ 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

4

1   yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.*

2   The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13

3   may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they

4   are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

5           In so holding, the Ninth Circuit joined the five other circuits who have addressed this

6   issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A)

7   motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a

8   defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020)

9   ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and

10   compelling reasons that an imprisoned person might bring before them in motions for

11   compassionate release.  Neither Application Note 1(D), nor anything else in the now-outdated

12   version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980

13   F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for

14   compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have

15   full discretion to define 'extraordinary and compelling' without consulting the policy statement §

16   1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy

17   statement covering prisoner-initiated applications for compassionate release.  District judges must

18   operate under the statutory criteria—'extraordinary and compelling reasons'—subject to

19   deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In

20   short, we agree with the Second Circuit and the emerging consensus in the district courts:  There

21   is as of now no 'applicable' policy statement governing compassionate-release motions filed by

22   defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are

23   'empowered . . . to consider any extraordinary and compelling reason for release that a defendant

24   might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021)

25   ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test,

26   its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case

27   was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G.

28   § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant.  *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id.*  Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable."  *Id.*

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

### A.    Administrative Exhaustion

In this case, the parties agree that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion.  (Doc. Nos. 319 at 10; 322 at 5.)  Specifically, defendant Hormozi submitted a written request for compassionate release to the warden of CI

/////

1    Dalby on October 19, 2020, and the Warden denied that request on October 29, 2020.  (*Id.*)

2    Accordingly, the court will turn to the merits of defendant's pending motion.

3    **B.     Extraordinary and Compelling Reasons**

4           According to the Sentencing Commission's policy statement, "extraordinary and

5    compelling reasons" warranting compassionate release may exist based on a defendant's medical

6    conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G.

7    § 1B1.13, cmt. n.1 (A)–(D).  As addressed above, even though the catch-all of "other reasons"

8    was included in the policy statement at a time when only the BOP could bring a compassionate

9    release motion, courts have agreed that it may be relied upon by defendants bringing their own

10   motions for reductions in their sentence under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No.

11   2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.)

12   Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform

13   its determination, this court is not restricted thereby and instead has "full discretion to define

14   'extraordinary and compelling' without consulting the policy statement § 1B1.13."  *Jones*, 980

15   F.3d at 1111.

16          The medical condition of a defendant may warrant the granting of compassionate release

17   by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced

18   illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a

19   probability of death within a specific time period) is not required."  U.S.S.G. § 1B1.13, cmt.

20   n.1(A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate

21   release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage

22   organ disease, and advanced dementia."  *Id*.  In addition to terminal illnesses, a defendant's

23   debilitating physical or mental condition may warrant compassionate release, including when:

24          The defendant is

25          (I)   suffering from a serious physical or medical condition,

26          (II)  suffering from a serious functional or cognitive impairment, or

27          (III) experiencing deteriorating physical or mental health because of
             the aging process, that substantially diminishes the ability of the
28           defendant to provide self-care within the environment of a

7

correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

In his pending motion, defendant Hormozi argues that extraordinary and compelling reasons warranting a reduction of his custodial sentence exist because he suffers lingering effects from previously contracting COVID-19, he has several health conditions that place him at a higher risk of re-infection from COVID-19, and the BOP has generally failed to adequately protect inmates in its custody from the virus.  (Doc. No. 319 at 3.)  In particular, defendant asserts that he suffers from obesity and is still dealing with the effects of his previous COVID-19 infection, which include using an albuterol inhaler for his badly damaged lungs.  (*Id*. at 4.)

---

[5]  Here, however, because defendant Hormozi is only 52 years old (Doc. No. 326 at 8—sealed), his age and age-related factors do not play a role in consideration of his pending motion.

1   Lastly, defendant also argues that he is particularly vulnerable to COVID-19 "because of the

2   abysmal conditions at Dalby and the inability of staff and inmates to follow basic CDC guidelines

3   like wearing masks and practicing distancing." (Doc. No. 319 at 6.)

4        In its opposition to the pending motion, the government acknowledges that defendant

5   "Hormozi's current height and weight result in a BMI of 33.4 . . . [and] [t]he CDC has

6   acknowledged that having a BMI above 25 'can make you more likely to get severely ill from

7   COVID-19.'" (Doc. No. 322 at 8) (citation omitted). However, the government argues that even

8   if the court were persuaded that "Hormozi's slight obesity, hyperlipidemia (mixed), and

9   (essential) hypertension meet the minimum threshold for consideration for compassionate

10   release," such consideration must take into account that "[Hormozi] has already contracted and

11   recovered from COVID-19 with no symptoms[.]" (*Id.* at 10.) The government emphasizes that

12   of particular importance here is the fact that defendant Hormozi was offered and refused the

13   COVID-19 vaccine while in custody, thereby undermining his argument that extraordinary and

14   compelling reasons exist based on the risk of severe illness posed to him if he were to contract

15   COVID-19. (*Id.*) In response to defendant's claims regarding the treatment he is receiving, the

16   government contends that defendant Hormozi's medical records "show that the BOP is

17   monitoring and treating his conditions as needed." (*Id.* at 9–10.) Finally, the government notes

18   that there are currently no reported active cases of COVID-19 infections at CI Dalby where

19   defendant is imprisoned. (*Id.* at 5.)

20        In his reply, defendant concedes that he has refused a vaccine shot while in custody and

21   that he already contracted COVID-19. (Doc. No. 330 at 2.) Defendant contends, however, that

22   vaccines have been shown to be less effective against the newly spreading Delta variant. (*Id.*)

23   Thus, defendant Hormozi argues, he would still be at risk for serious complications "even if he

24   were to be vaccinated." (*Id.*) Defendant points to a statement by the World Health Organization

25   that people should continue using masks, washing their hands, and avoiding crowding. (*Id.* at 3.)

26   According to defendant, "[t]hese steps are an impossibility at Dalby. Social distancing is an

27   impossibility, inmates and guards alike don't wear masks, and there is next to no sanitation."

28   (*Id.*) Consequently, defendant argues that even if he had agreed to be vaccinated, "the unsafe

1  conditions at Dalby, combined with his own health issues and the rise of the Delta variant, still

2  would constitute an extraordinary and compelling reason for his release." (*Id.*)  Finally,

3  defendant states that he is susceptible to reinfection from COVID-19 and therefore his "past bout

4  with COVID-19 does not provide sufficient guarantee he will not get infected again." (*Id.*)

5       The court concludes that defendant has failed to show the existence of extraordinary and

6  compelling reasons calling for his release from confinement in light of the critical fact that he has

7  refused COVID-19 vaccination, combined with both the fact that he has already suffered from

8  COVID-19 (thankfully, without apparently becoming severely ill) and that CI Dalby is currently

9  reporting zero active COVID-19 cases.[6]  Obesity is recognized by the U.S. Centers for Disease

10 Control and Prevention ("CDC") as a health condition that may place individuals at a high risk of

11 suffering severe illness from COVID-19.  *See People with Certain Medical Conditions*, Centers

12 for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

13 precautions/people-with-medical-conditions.html (last updated May 13, 2021).  Notably,

14 defendant Hormozi has not argued that CI Dalby is failing to adequately treat his medical

15 conditions or that he is unable to provide self-care for his recognized conditions.  Indeed,

16 defendant's medical records establish that the opposite is true.  (*See* Doc. No. 326—sealed.)

17      As to defendant's unvaccinated status, the parties agree that he refused the vaccine on

18 May 19, 2021; thus, defendant had the opportunity to be vaccinated before his supplemental brief

19 in support of the pending motion was filed.  (Doc. No. 322 at 5.)  Defendant essentially argues

20 only that the vaccines do not provide complete immunity from COVID-19 and therefore his

21 election to refuse vaccination should not impact this court's decision with respect to the pending

22 motion.  (Doc. No. 330 at 2.)  The court finds defendant's argument in this regard to be

23 unpersuasive.  While it appears to be correct, as defendant contends, that vaccinated individuals

24

---

25  [6]  As of the date of this order, the BOP is reporting that there are zero inmates at the CI Dalby
contracted correctional institution, where approximately 1,783 federal prisoners are held, who

26  have tested positive with active cases of COVID-19.  *See COVID-19*, FEDERAL BUREAU OF
PRISONS, https://www.bop.gov/coronavirus/ (last visited Aug. 10, 2021).  While the undersigned

27  does not necessarily accept these reported numbers at face value in light of guidelines with
respect to both testing and the manner of counting "active cases," there is also no evidence before

28  the court challenging those reported numbers in this case.

1  may nonetheless contract COVID-19, defendant does not claim that it is likely that a vaccinated

2  individual may also suffer from a *severe* illness as a result—only that a vaccinated individual may

3  still contract the virus.  Based upon news reports, it would also appear that it is exceedingly rare

4  for a vaccinated individual to both contract the virus and to suffer a severe illness as a result.  *See*

5  Deidre McPhillips & Christina Maxouris, *About 99.999% of fully vaccinated Americans have not*

6  *had a deadly COVID-19 breakthrough case, CDC data shows,* https://www.cnn.com/2021/07/31/

7  health/fully-vaccinated-people-breakthrough-hospitalization-death/index.html (last visited Aug.

8  10, 2021); Lila Seidman, *Napa County Records First Death of Fully Vaccinated Person from*

9  *COVID-19*, June 7, 2021, https://www.latimes.com/california/story/2021-06-07/napa-county-

10  records-first-fully-vacinated-person-covid-death (last visited July 14, 2021).

11        Here, defendant is seeking his release from prison based on the argument that he will

12  suffer a severe illness if he were to contract COVID-19 again.  According to the CDC, authorized

13  vaccines in the U.S., including the Pfizer-BioNTech vaccine, "are highly effective at protecting

14  vaccinated people against symptomatic and *severe* COVID-19."  *See COVID-19: Interim Public*

15  *Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and

16  Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html

17  (last updated May 28, 2021) (emphasis added).  At this point, medical evidence strongly suggests

18  that fully vaccinated individuals are very well protected against becoming severely ill from

19  COVID-19.  *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB-2, 2021 WL

20  2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has

21  been substantially reduced because [defendant] is likely now fully vaccinated" which "provides

22  him with significant protection against severe illness or death from COVID-19 should he become

23  reinfected"); *United States v. Willis*, No. 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Or.

24  May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from

25  chronic medical conditions that would put them at serious risk of severe illness from COVID-19

26  do not satisfy the extraordinary and compelling standard for compassionate release) (citing

27  cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D.

28  Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the

question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where defendant has been fully vaccinated); *United States v. Grummer*, ___ F. Supp. 3d ___, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 3:16-cr-5535-BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").  Notably, as one judge of this court emphasized recently, "[i]f defendants could buttress their motion for compassionate release by refusing a safe and effective vaccine, they would be operating on an unfairly perverse incentive." *United States v. Figueroa*, No. 2:09-cr-00194-KJM, 2021 WL 1122590, at *4 (E.D. Cal. Mar 24, 2021).  The undersigned agrees and concludes that it would set a dangerous and unreasonable precedent if the court were to allow sentenced prisoners who refuse vaccination to successfully use their lack of protection from COVID-19 in support of their claims for compassionate release.

In light of all of the above, the court concludes that although defendant Hormozi suffers from obesity and some apparent effects from his previous COVID-19 infection, he has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582 (c)(1)(A), in large part because that risk could be significantly mitigated by his being vaccinated, a vaccination he has chosen to decline.  Therefore, his motion for compassionate release will be denied.

## C. Consistency With the § 3553(a) Factors

Finally, even if defendant Hormozi's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned at this time is not yet persuaded that the requested reduction in his sentence would be consistent with consideration of

1  the sentencing factors set forth at 18 U.S.C. § 3553(a). [7]  *See Parker*, 461 F. Supp. 3d at 979.

2          Defendant contends that a reduction of his sentence is consistent with consideration of the

3  § 3553 sentencing factors because his criminal history consists only of misdemeanor offenses, he

4  was on pretrial release for nearly three years before his incarceration and had no violations of the

5  conditions of his pretrial release, his current conditions of confinement are more severe than those

6  anticipated at the time of sentencing due to COVID-19, and he has a stable family to live with and

7  where he can also quarantine.  (Doc. No. 319 at 13.)

8          The government counters that an "analysis of Hormozi's crimes in this case, his

9  characteristics, the need to promote respect for the law and provide for just punishment, and to

10  protect the public from future crimes, would lead to a conclusion that a sentence reduction is

11  inappropriate in this case and inconsistent with the § 3553(a) factors."  (Doc. No. 322 at 12.)

12  Specifically, the government contends that a reduction in defendant's sentence at this time would

13  be inconsistent with consideration of the § 3553(a) sentencing factors because he has served only

14  a small portion of his original 126-month custodial sentence (approximately 23 months), and that

15  original sentence imposed reflected the seriousness of his drug trafficking offenses.  (*Id.*)

16          In his reply, defendant Hormozi argues that he has not been able to engage in any

17  meaningful BOP programming since the start of the outbreak in March 2020.  (Doc. No. 330 at

18  3.)  He contends that such programming allows inmates to learn and reduces the risk of

19  recidivism.  (*Id.*)  Moreover, defendant points out that participation in these programs normally

20  allows inmates to earn time credit.  (*Id.* at 4.)  Consequently, defendant contends, he has been

21

_____

22  [7]  Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court
    shall consider:  the nature and circumstances of the offense and the history and characteristics of

23  the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote
    respect for the law, provide just punishment for the offense, afford adequate deterrence, protect

24  the public from further crimes of the defendant and provide the defendant with needed
    educational or vocational training, medical care, or other correctional treatment in the most

25  effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range
    established for the applicable category of offense committed by the applicable category of

26  defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing

27  Commission; the need to avoid unwarranted sentence disparities among defendants with similar
    records who have been found guilty of similar conduct; and the need to provide restitution to any

28  victims of the offense.

1   unable to earn additional time credits that would otherwise be available to him and has been

2   unable to demonstrate how he has rehabilitated since his conviction.  (*Id.*)

3          As noted above, defendant Hormozi is currently serving a 126-month sentence of

4   imprisonment for conspiracy to distribute and to possess with intent to distribute

5   methamphetamine and distribution of methamphetamine.  (Doc. No. 224.)  The U.S. Probation

6   Office determined that defendant's total offense level in this case was 36, based on the 1,784

7   grams of methamphetamine involved in his offense of conviction, and his criminal history was

8   III, resulting in an advisory sentencing guideline range calling for a term of imprisonment of

9   between 235 and 240 months.  (Doc. No. 207 at 4, 8.)  Noting that defendant's criminal history

10  category substantially over-represented the seriousness of his prior criminal record, his mental

11  health issues, his alcohol addiction, and his lack of education and employment, the probation

12  officer recommended both a downward departure and a downward variance under § 3553(a) to a

13  below guideline range sentence of 180 months in BOP custody.  (*Id.* at 16, 19.)  The undersigned

14  relied upon its careful consideration of the same § 3553(a) factors in varying significantly

15  downward even further from probation's recommendation and imposed a 126-month term of

16  imprisonment.  (Doc. No. 224.)

17         The court is not persuaded that a reduction in defendant Hormozi's already arguably

18  lenient sentence would be consistent with the appropriate consideration of the § 3553(a)

19  sentencing factors at this time.  First, although defendant asserts that he has been rehabilitated and

20  also that he has lost opportunities to show his changed ways via BOP programming, he has not

21  specifically identified or described any of his rehabilitative efforts other than the fact that he

22  committed no violations during his pretrial release, nor has he provided specific support for his

23  general claim to have lost the opportunity to earn additional good time credits due to the COVID-

24  19 pandemic.  (Doc. No. 319 at 12.)[8]  Moreover, even if the court were persuaded that defendant

25

26  ─────────────────
    [8]  Were the defendant to be able to make a specific and well-supported motion establishing that he
    has been denied the ability to earn a specific amount of good time or other credits that would have
27  been available to him but for the COVID-19 pandemic, the court would consider a more modest
    request for a reduction of the sentence imposed in his case if otherwise supported by the
28  governing legal standards set forth above.

                                             14

1    had demonstrated his rehabilitation, rehabilitation alone is not enough to warrant compassionate

2    release.  *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3.

3         Second, "[t]he length of the sentence remaining is an additional factor to consider in any

4    compassionate release analysis,' with a longer remaining sentence weighing against granting any

5    such motion."  *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *6

6    (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL

7    2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-

8    1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate

9    release, noting, "the Court finds it significant that defendants have served far less than half of

10   their sentences").  Here, as of the date of this order, defendant Hormozi has served significantly

11   less than half (approximately 23 months) of the 126-month sentence imposed.  (Doc. No. 322-1 at

12   4.)  In the court's view, considering that defendant Hormozi already received a well below-

13   guideline range sentence, a reduction of his 126-month sentence effectively to one of 23 months

14   would not adequately reflect the seriousness of his offense of conviction, promote respect for the

15   law, provide just punishment, or afford adequate deterrence to criminal conduct.[9]  *See United*

16   *States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020);

17   *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

---

18   [9]  In the pending motion, defendant also appears to ask the court to release him on home

19   confinement.  (*See* Doc. No. 319 at 13.)  However, the CARES Act "'authorizes the BOP—not
     courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)."  *United States v.*

20   *Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United*
     *States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020)

21   (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4

22   (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made
     in conjunction with his motion for compassionate release because "the court has no authority to

23   designate the place of confinement" because the "Bureau of Prisons has the statutory authority to
     choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-

24   54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does
     not authorize the court to order defendant's placement in home confinement").  The district court

25   may only impose home detention as a condition of supervised release, rather than as part of a
     sentence of imprisonment.  *See Connell*, 2020 WL 2315858, at *5 n.6 & *7.  Accordingly, to do

26   as defendant requests, the court would be required to reduce his sentence to one of time served
     (i.e. approximately 23 months) and modify the conditions of his term of supervised release to

27   include approximately 103 additional months of home confinement.  The court is unwilling to do
     so for the reasons set forth above.

28

                                                    15

Third, reducing defendant Hormozi's custodial sentence to one of 23 months would arguably result in unwarranted sentence disparities among his co-defendants.  Neither defendant Hormozi nor the government has addressed this factor, but the court notes that co-defendant Joseph Wayne Attaway, II, who was determined to have a total offense level of 36 and a criminal history category of V, resulting in an advisory sentencing guideline range calling for a term of imprisonment of 240 months[10], was sentenced to 204 months of imprisonment.  (Doc. No. 223 at 2.)  Thus, if the court were to grant defendant Hormozi's motion to release him now, after he has served only 23 months, he would receive a far, far shorter term of imprisonment compared to that of his co-defendant, which would not be called for under the facts of this case.

On balance, the court also finds that granting defendant's motion and reducing his sentence to time served at this time would not be consistent with the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Hormozi has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. Nos. 294, 319) is denied.

IT IS SO ORDERED.

Dated:  __**August 10, 2021**__          _____

UNITED STATES DISTRICT JUDGE

---

[10]  The statutorily authorized maximum sentence in co-defendant Attaway's case, as in defendant Hormozi's, was 240 months on each count.  In defendant Attaway's case, an offense level of 36 and a criminal history category of V would normally call for an advisory sentencing guideline range calling for a term of imprisonment of between 292 and 365 months.  However, the 240 month statutory maximum became the applicable guideline range in his case.  (Doc. No. 208 at 16.)